```
                 IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          CRIMINAL ACTION
                                  :
           v.                     :
                                  :          NO. 17-039
JAMES DONAGHY                     :
```

MEMORANDUM

Bartle, J.                                              August 18, 2020

The Court has before it the motion of defendant James Donaghy for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

I

On January 19, 2017, a federal grand jury returned a four-count indictment against defendant James Donaghy, charging him with: (1) enticement of a minor to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2422(b); (2) manufacture of child pornography, in violation of 18 U.S.C. § 2251; (3) receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and (4) possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). On April 25, 2017, defendant entered pleas of guilty to all charges in the indictment, pursuant to a written plea agreement with the government.

On August 29, 2017, this Court sentenced defendant to 180 months imprisonment to be followed by 10 years of supervised release. Defendant is currently serving his sentence at the

Federal Correctional Institution at Fort Dix ("FCI Fort Dix") in New Jersey.  His anticipated release date is November 4, 2029.

II

Defendant's motion for compassionate release relies on section 3582(c)(1)(A) as recently amended by the First Step Act. It provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>     (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>         (i)  extraordinary and compelling reasons warrant such a reduction
>         . . .
>
> and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Defendant has exhausted his administrative remedies, and we turn first to the elements that a defendant must meet

under section 3582(c)(1)(A)(i) to obtain a reduction in sentence. It provides that a court may order compassionate release for "extraordinary and compelling reasons" but only if the reduction in sentence is "consistent with applicable policy statements of the Sentencing Commission."

Congress has also enacted 28 U.S.C. § 994(t) which provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The application note 1(A) of section 1B1.13 of the Sentencing Guidelines explains that "extraordinary and compelling reasons" exist where the defendant is: (1) "suffering from a terminal illness" including among others "advanced dementia"; (2) "suffering from a serious physical or medical condition"; (3) "suffering from a serious functional or cognitive impairment"; or (4) "experiencing deteriorating physical or mental health because of the aging process." The latter three grounds also require that the impairment "substantially diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover."

### III

Defendant asserts that compassionate release should be granted because he: (1) suffers from several serious medical conditions, including "heart arrythmia, heart palpitations, and heart disease"; (2) is obese with a BMI of 34; (3) has "non-obstructive coronary artery disease"; and (4) is a "habitual daily cigarette and marijuana user." Defendant maintains that his heart arrythmia has been "recently discovered" and "has not been treated due to the outbreak of the [coronavirus]." He further reports that some of his medical records "were lost and need to be tracked down" and that he continues to receive "inadequate care" at FCI Fort Dix. According to defendant, these "comorbidity factors" along with the "impossibility of social distancing" "creates an exponentially greater risk of death or irreparable harm" for him.

With respect to the pandemic, defendant provides extensive information about the potential dangers to those in prison facilities who cannot engage in social distancing or take other salutary measures necessary to mitigate the spread of coronavirus. He requests a sentence of time served, or in the alternative, a period of home confinement.

The Government opposes defendant's motion. It disputes defendant's characterization that his medical conditions are as serious as he claims. It asserts that defendant's "medical records demonstrate mild cardiac issues, none of which require treatment . . . and do not justify his release for health-related concerns." According to the Government, defendant's medical conditions are "appropriately managed at the facility." The Government further maintains that compassionate release should not be granted because defendant "poses an extreme danger to the community" and should be required to serve the sentence that this Court imposed for his criminal conduct.

According to Bureau of Prisons health records, defendant reported heart arrhythmia and palpitations to BOP medical staff on numerous occasions and his most recent electrocardiogram ("EKG") showed a "normal sinus rhythm." He is listed as having cardiac arrhythmia, but he has not been assigned any medication for his heart conditions. Defendant's medical records do not show any additional requirements for further treatment for his heart conditions, other than follow-up monitoring. On April 3, 2020, defendant had a medical examination and it did not include a diagnosis of "non-obtrusive coronary artery disease," as indicated by him. Defendant also has a previous diagnosis of hyperlipidemia (high cholesterol)

and suffers from dental problems.  His last recorded weight was 225 pounds, with a BMI of 30.5, just above level 30, which the Center for Disease Control classifies as obese.  There is nothing in his medical records to suggest defendant's weight impedes his ability to be ambulatory, or that he has any physical restrictions or limitations.

The Court is, of course, mindful of the devastating worldwide pandemic and the special dangers the highly contagious coronavirus poses for the defendant and all others in prison.  However, the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease.  See United States v. Roeder, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).  The Bureau of Prisons, including FCI Fort Dix, has in place protocols to deal with this disease and the Attorney General has issued two directives to the Bureau of Prisons concerning early release of inmates, which it is following.

Based on the current record, defendant has not established that his heart conditions, obesity, and former smoker status constitute serious medical conditions as defined in the Sentencing Guidelines.  The serious medical condition under the Sentencing Guidelines must be an impairment which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional

6

facility and from which he or she is not expected to recover." Defendant clearly does not meet this requirement.

Even if defendant has the requisite serious medical conditions, the Court's analysis does not end here.  Section 3582(c)(1)(A) requires the Court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before the Court may reduce his sentence.  These factors include the need to:  "reflect the nature and circumstances of the offense and the history and characteristics of the defendant"; "reflect the seriousness of the offense"; "promote respect of the law"; and "afford adequate deterrence to criminal conduct."

In this regard, defendant claims that he is "truly sorry for his crime which will never be repeated."  He reports that he has "attempted to better himself while being incarcerated, through work, deep thought and prayer, and the taking of numerous educational courses" and an apprenticeship in maintenance repair.  If granted release, defendant will live with his mother, father, and wife in Philadelphia and plans to work at his former employer as a facility supervisor for a clothing company.  While the court applauds defendant for any strides he has made toward rehabilitation, these factors alone do not allow for his release.  Under 28 U.S.C. § 994(t), Congress has made it clear: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling

7

reason" for compassionate release.  In any event, his rehabilitation, good works, and family circumstances do not outweigh other section 3553(a) factors which support the need for him to serve the sentence imposed.

This Court cannot ignore the seriousness of defendant's criminal conduct.  As noted before, defendant pled guilty of a crime involving an extended period of sexual exploitation of a 13-year-old child.  At the time of the crime, defendant was three times the age of the victim and went to great lengths to manipulate and take advantage of her.  He devised a fake business and an alter ego to coerce the victim into sharing graphic images and videos.  "Child pornography harms and debases the most defenseless of our citizens."  United States v. Williams, 553 U.S. 285, 307 (2008).  Defendant's crimes are of the most serious nature and underscore the danger defendant poses to the community.  He has not provided any evidence to suggest otherwise.  Additionally, defendant has only served approximately one-third of his sentence.  Releasing him now would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct.  See section 3553(a).

The Court, taking all the relevant facts into account, finds that defendant James Donaghy has not established extraordinary and compelling reasons that warrant his

8

entitlement to compassionate release.  Accordingly, the Court will deny the motion of defendant for compassionate release under 18 U.S.C. § 3582(c)(1)(A).